IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **JERRY W. LEWIS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:04CV01215 |
| | ) | |
| **EXTENDED STAY AMERICA, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**Sharp, Magistrate Judge**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendant Extended Stay America, Inc. ("Extended Stay"). (Pleading No. 24.) Plaintiff Jerry Lewis ("Lewis") has responded in opposition, and Extended Stay has filed a reply. The motion for summary judgment is ready for a ruling.

**Procedural History**

Plaintiff Lewis filed a Verified Complaint in this Court on December 29, 2004, alleging that Defendant Extended Stay terminated his employment because of his disability (blindness) and his age. (Pleading No. 1 ("Compl.")). He asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, the North Carolina Persons with

Disabilities Protection Act, N.C. Gen. Stat. Ann. § 168A, and wrongful discharge under North Carolina common law.

The Complaint was served on Extended Stay on or about March 21, 2005. (Pleading No. 3.) Extended Stay answered the Complaint in a timely fashion, and later amended its Answer. (Pleading Nos. 6 and 23.) The parties have consented to the Magistrate Judge's jurisdiction over all proceedings. (Pleading No. 8.)

After engaging in discovery, Extended Stay moved for summary judgment on all of Plaintiff's claims. (Pleading No. 24.) Plaintiff opposed the motion, and Extended Stay has replied. (Pleading Nos. 31, 38.)

**Factual Background**

The following facts are undisputed unless otherwise noted. Plaintiff Lewis, a resident of Guilford County, is a 64 year-old-man who has been legally blind since childhood. (Pleading No. 25, Ex. 1, Deposition of Jerry Wayne Lewis ("Pl.'s Dep.") at 23-25.) He attended a school for the blind and worked for services for the blind before retiring in 1991. *Id.* at 26.

In 1999, Plaintiff's wife Linda Lewis was employed by Defendant Extended Stay as a laundry attendant. (Pleading No. 25, Ex. 2, Deposition of Linda Faye Lewis ("Linda Lewis Dep.") at 17-18.) Beginning in or about March 1999, Ms. Lewis worked the 11 p.m. to 7 a.m. shift, full time, five days a week. *Id.* Plaintiff began accompanying his wife to her job and helped out by cleaning floors and emptying trash at the hotel. (Pl.'s Dep. at 13-14;

Linda Lewis Dep. at 14.) Plaintiff applied for a part-time job in maintenance or laundry, with hours corresponding to his wife's schedule. (Pleading No. 25, Ex. 3.) In June 1999, Extended Stay hired Plaintiff to work part-time in the maintenance department. The maintenance position was allocated 56 hours per week at that time. James Hamby, a full time employee, performed most of the maintenance work during the day shift, working 40 hours per week. (Linda Lewis Dep. at 28-29.) Plaintiff was allotted the remaining 16 hours, and worked two nights a week. *Id.* at 25-26. Plaintiff was unable to perform maintenance tasks such as plumbing, electrical, painting and furniture repair, and these tasks were performed primarily by Mr. Hamby during the day shift. *Id.* at 81-88, 90. Plaintiff mopped floors and cleaned out trash cans. *Id.*

Sometime in 2000, the weekend night laundry attendant resigned. Plaintiff asked for the job, and Extended Stay's local manager, Chad Patterson, agreed to let Plaintiff take over the position until someone else could be found. *Id.* at 26-28. Plaintiff's wife accompanied Plaintiff to the job and helped him perform his job, even though she was not scheduled to work and she did not receive compensation for these hours. *Id.* at 68, 88-89. For some time, Plaintiff performed both the part-time maintenance and the part-time weekend laundry attendant jobs.

Subsequently, Chad Patterson left Extended Stay, and William Alexander became the new local manager. Alexander determined that Plaintiff was unable to perform the essential functions of the maintenance position. (Pleading No. 25, Ex. 4 (Deposition of William D.

-3-

Case 1:04-cv-01215-PTS   Document 42   Filed 09/27/06   Page 3 of 12

Alexander ("Alexander Dep.") at 37, 41-42.) Around the same time, the hours allocated to the maintenance position were reduced to 48 hours per week, and the part-time maintenance position was eliminated. *Id.* Alexander continued to schedule Plaintiff for the weekend night laundry shift with the understanding that Plaintiff's wife was assisting him.

The essential duties of the night laundry attendant include ensuring that laundry and kitchenware are cleaned daily, identifying stained items and ensuring that they are separated out for management's inspection, identifying and addressing shrinkage, ensuring that laundry equipment is functional, and ensuring that all rooms are adequately stocked. (Pleading No. 25, Ex. 11.) The night laundry attendant is the only employee on duty during the night and, therefore, that individual must also perform front desk duties, respond to guest requests and respond to emergency situations. *Id.*; Linda Lewis Dep. at 30-40, 45-64. The undisputed evidence shows that Plaintiff was unable to perform these tasks without the assistance of his wife. (Pl.'s Dep. at 31-32, 78, 88-89, 91; Linda Lewis Dep. at 30, 88-89.)

In or about August 2003, Nasser Jarrah became the new regional manager overseeing the operations of the Greensboro hotel. After looking into the situation, Jarrah reported to Marshall L. Dildy, Executive Vice President, Human Resources, that Plaintiff was not able to perform the duties of laundry attendant without the assistance of his wife. Dildy began an investigation and requested that Jarrah report back as to Plaintiff's ability to perform the essential functions of the job with our without reasonable accommodation. Jarrah reported back that Plaintiff was not able to perform the essential functions of the job without the

assistance of another person and that, in fact, the Plaintiff's wife had been performing the essential functions of the laundry position for Plaintiff.

Dildy contacted the South Carolina Department of Vocational Rehabilitation to inquire whether there were any reasonable accommodations that would enable Plaintiff to perform the job. The Department advised Dildy that it was not aware of any such accommodations. (Pleading No. 25, Ex. 5, Deposition of Marshall L. Dildy ("Dildy Dep.") at 8-12, 16-17, 22-27, 31, 33; Pl.'s Dep. at 36-39.) On or about September 26, 2003, Extended Stay terminated Plaintiff's employment. Dildy and Jarrah met with Plaintiff and his wife to discuss the termination. Plaintiff asked that he either be allowed to continue in the current position or be reassigned to his part-time maintenance position (which had been eliminated). Dildy explained that Plaintiff could not perform the essential functions of the night laundry attendant, that the job provided for only one employee per night and that the current arrangement violated company policy and the law. Extended Stay offered Plaintiff and his wife compensation for the time they had spent on site for each others' shifts during the past two years, and requested that Plaintiff and his wife sign a Settlement Agreement, Covenant Not to Sue, Receipt and General Release. Both Plaintiff and his wife agreed to accept the payment and signed the releases. (Dildy Dep. at 23-24, 44-52; Pl.'s Dep. at 37-40, 148; Linda Lewis Dep. at 108-13, 145; Pleading No. 25, Ex. 6.)

On October 3, 2003, Plaintiff consulted with attorney Todd J. Combs, and executed a statement purporting to revoke and rescind his release. On October 22, 2003, Plaintiff's

counsel sent a letter to Dildy advising that Plaintiff had decided to revoke his release and was asserting claims for disability and age discrimination. Plaintiff demanded $375,000 to settle and threatened to file a charge with the Equal Opportunity Employment Commission in 12 days. The settlement check was enclosed. (Pleading No. 25, Ex. 7.) Extended Stay offered to have Plaintiff evaluated by a vocational rehabilitation specialist under the condition that each side would abide by the specialist's recommendations. Plaintiff rejected the offer. *Id.* Plaintiff has not sought employment since his termination. (Pl.'s Dep. at 69.)

On January 7, 2004, Plaintiff and his wife filed Chapter 7 voluntary bankruptcy in the United States Bankruptcy Court, Middle District of North Carolina, B-04-10044-C. Plaintiff did not disclose to the Trustee any contingent claim for employment discrimination. The Bankruptcy Trustee issued a Report of No Distribution, and subsequently the Bankruptcy Court granted a discharge on April 19, 2004. (Pleading No. 25, Exs. 8 and 9.)

On January 16, 2004, Plaintiff filed a charge of discrimination against Extended Stay with the Equal Employment Opportunity Commission. The EEOC dismissed the charge in September 2004. *Id.* Ex. 10. Plaintiff filed this suit in December 2004.

## Discussion

Defendant seeks summary judgment on several grounds. The summary judgment standard of review under Rule 56 of the Federal Rules of Civil Procedure is well established. A party is entitled to judgment as a matter of law upon a showing that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The material facts are those identified

-6-

Case 1:04-cv-01215-PTS   Document 42   Filed 09/27/06   Page 6 of 12

by controlling law as essential elements of claims asserted by the parties. A genuine issue as to such facts exists if the evidence forecast is sufficient for a reasonable trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of its case as to which it would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In evaluating a forecast of evidence on summary judgment review, the court must view the facts and inferences reasonably to be drawn from them in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

When the moving party has carried its burden, the nonmoving party must come forward with evidence showing more than some "metaphysical doubt" that genuine and material factual issues exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *cert. denied,* 481 U.S. 1029 (1987). A mere scintilla of evidence is insufficient to circumvent summary judgment. *Anderson*, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the nonmoving party. *Id*. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

Defendant maintains that Plaintiff executed a binding release of his claims and that his attempted revocation of his release was ineffective. Plaintiff argues in opposition that the revocation was effective.

Employees may validly waive their right to sue for discrimination in private settlements with their employers, provided that their consent to release is knowing and voluntary. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974). A knowing and voluntary waiver will preclude a party from suing under federal discrimination laws, including the ADA and the ADEA. *Adams v. Moore Bus. Forms, Inc.,* 224 F.3d 324, 328 (4th Cir. 2000). Under the ADA and in connection with North Carolina state law claims, courts within the Fourth Circuit apply ordinary contract principles to determine the validity of a release. *O'Shea v. Commercial Credit Corp.*, 930 F.2d 358, 362 (4th Cir.), *cert. denied*, 502 U.S. 859 (1991), *superseded in part by statute*, 29 U.S.C. § 626(f)(1); *Adder v. Holman & Moody, Inc.*, 288 N.C. 484, 491-92 (1975). A release will be valid if it was voluntary, deliberate and informed, and is supported by consideration. *O'Shea,* 930 F.2d at 362; 288 N.C. at 491-92.

Unlike the release of a Title VII or other discrimination or wrongful discharge claim, the release of an age discrimination claim is held to more exacting standards. The Older Workers Benefit Protection Act of the ADEA, 29 U.S.C. § 626(f)(1) (OWPBA), provides that in a case alleging age discrimination, a waiver will be considered knowing and voluntary only if it meets certain requirements. 29 U.S.C. § 626(f)(1); *Oubre v. Entergy*

*Operations, Inc.*, 522 U.S. 422, 426-27 (1998). Specifically, a waiver of claims of age discrimination must be written in a manner understandable to the employee, must refer to claims arising under the ADEA, must not abrogate claims that arise after the waiver's execution, must be supported by consideration, must advise the employee to consult with an attorney, must give the employee 21 days to consider the agreement, and, of most importance here, must provide the employee with at least seven (7) days to revoke its terms. 29 U.S.C. §§ 626(f)(1)(A)-(G).

The Settlement Agreement, Covenant Not to Sue, Receipt and General Release in this case is written in plain and unambiguous terms and was read to Plaintiff before he signed it. It is undisputed that he was given no time restrictions, was advised of his right to seek counsel, was advised that he would be terminated whether or not he signed the release, and received consideration for releasing his potential claims. (Dildy Dep. at 46-49.) His wife assisted him and placed his hand on the signature line, and she also signed a release and cashed her check. Plaintiff maintains that because he was approached after having been at the hotel all night for his wife's shift and because he was confronted with losing his job, his waiver was not voluntary. The Court does not find this evidence sufficient to create a dispute of fact on the voluntariness of the release. Personal economic burdens resulting from the loss of a job do not, generally speaking, constitute "duress" for the purpose of invalidating a termination release. *Melanson v. Browning-Ferris Indus., Inc.*, 281 F.3d 272, 277 (1st Cir. 2002). Neither does the summary judgment record reveal a genuine dispute

over whether Defendant took advantage of Plaintiff when he was in a fragile or exhausted state.

The Court concludes that, with respect to Plaintiff's claims for disability discrimination under federal and state law and his claim for wrongful discharge under state law, Plaintiff executed a valid release and could not effectively revoke that release merely by advising Defendant of his change of mind and tendering the consideration back to Defendant.

Plaintiff's revocation within seven days of executing the release *was*, however, effective as to his age discrimination claim. Federal law expressly allows for such a revocation. *See* 29 U.S.C. § 626(f)(1)(G). Nevertheless, Defendant argues that Plaintiff's claim for age discrimination fails at the summary judgment stage because Plaintiff cannot establish a *prima facie* case of age discrimination and, in any event, cannot show that the employer's proffered non-discriminatory reason for dismissal was pretextual. To establish a *prima facie* case of unlawful age discrimination, Plaintiff must prove by a preponderance of the evidence that (1) he is a member of the protected class; (2) he was qualified for the job and met the employer's legitimate expectations; (3) he was discharged despite his qualifications and performance; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful age discrimination. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996). If Plaintiff establishes a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the

-10-

termination. *Id.* If the employer does this, Plaintiff may prevail by demonstrating that the proffered reason is pretextual and the real reason for the termination was Plaintiff's age. *Id.*

Review of the record shows that Plaintiff cannot establish a *prima facie* case of age discrimination. The undisputed evidence shows that Plaintiff is unable to meet the employer's legitimate expectations of the night laundry attendant. Plaintiff cannot see stains on laundry; cannot sort laundry; cannot fold laundry in accordance with company standards; cannot keep the shrinkage log; cannot clean and inspect kitchenware; cannot check in guests; cannot use the computer; cannot use the fire alarm panel; cannot respond to emergencies in accordance with company policy; and cannot supervise the lobby and office. (Linda Lewis Dep. at 30, 88-89.) It is undisputed that Plaintiff's wife worked off the clock to perform his job because he could not do it alone. *Id.*; Pl's Dep. at 26-27, 38. New management became aware of this situation and sought to correct it. Further, none of the circumstances surrounding Plaintiff's discharge evidence a causal connection between his age and his termination. The employee who assumed Plaintiff's laundry position and the full time maintenance employee were both over the age of 60. Accordingly, for the reasons argued by Defendant, Plaintiff is unable to survive summary judgment on his age discrimination claim.

All claims of the Plaintiff having failed as a matter of law, judgment should be afforded to Defendant.

**Conclusion**

For the foregoing reasons, **IT IS ORDERED** that Defendant's motion for summary judgment (Pleading No. 24) is **GRANTED**. A judgment, dismissing the action with prejudice, will be entered contemporaneously with this Memorandum Opinion and Order.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: September 27, 2006